**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 14, 2020**

# In the Court of Appeals of Georgia

A20A1041. BARNES et al. v. BEARDEN et al.

RICKMAN, Judge.

Rebecca Barnes and the Georgia Association of Educators ("GAE")[1] appeal the dismissal of their complaint in which they asserted that state and local education officials illegally deprived public school teachers, such as Barnes, of their vested tenure rights under Georgia's Fair Dismissal Act ("FDA"), OCGA § 20-2-940 et seq., when their school system was converted into a charter school system and when Barnes was thereafter terminated. Barnes and the GAE asserted that by depriving them of these rights, the officials violated the Georgia Constitution's prohibition of

---

[1] The GAE is a non-profit member organization that assists and represents public school teachers in Georgia.

retroactive laws and laws that impair the obligation of contracts. For the reasons that follow, we vacate in part, reverse in part, and remand.

On appeal of the grant of a motion to dismiss, this Court conducts a de novo review. See *Dove v. Ty Cobb Healthcare Systems*, 316 Ga. App. 7, 9 (729 SE2d 58) (2012). "[O]ur role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts[.]" (Citations and punctuation omitted.) Id.

Under the FDA, Georgia public education teachers who accept a contract for four consecutive years acquire certain tenure rights, including a limitation on the grounds for termination; the right to receive written notice of a local school board's intention to demote, dismiss, or non-renew a teacher, together with the reasons therefor; and the right to a hearing, if requested. See OCGA §§ 20-2-940 (b) & 20-2-942 (b) (2). In the event of an adverse decision, the teacher may appeal to the State Board of Education. See OCGA § 20-2-940 (f).

Construed in the light most favorable to Barnes and the GAE, the record shows that Barnes was a teacher in the Fannin County School System ("FCSS"). At the

2

beginning of the 2003-2004 school year, Barnes achieved tenure in accordance with the FDA.

Several years after Barnes achieved tenure, the General Assembly enacted the Charter Systems Act, effective July 1, 2007, which amended the Charter Schools Act of 1998 by establishing charter school systems. See 2007 Ga. L. 185, § 1-16; OCGA §§ 20-2-2060 & 20-2-2062 through 20-2-2069. Importantly, the Charter Systems Act provides that, "[e]xcept as provided in this article or in a charter," charter systems "shall not be subject to" the provisions of Title 20 — Education — of the Georgia Code, including the requirements of the FDA. See OCGA § 20-2-2065 (a).

In October 2014, the Fannin County School Board petitioned the State Board of Education to convert FCSS into a charter system under the Charter Systems Act. The Fannin County School Board did not request that any provisions of the FDA be included in its charter agreement. The State Board approved the Fannin School Board's petition, and the parties entered into a charter agreement by which FCSS would operate as a charter system for five years beginning July 1, 2015.

Meanwhile, Barnes had continued her employment with FCSS, but at the end of the 2016-2017 school year, the Fannin County School Board decided not to renew her contract, and they did so without providing her with FDA tenure rights. For

3

example, she was not given notice of the reasons for her termination nor given an opportunity for a hearing to challenge those reasons.

Barnes and the GAE filed suit against the superintendent of the Fannin County School District and named members of the Fannin County Board of Education (collectively, the "Local Appellees"), and the State School Superintendent and named members of the State Board of Education (collectively, the "State Appellees"), all in their individual capacities. In two counts, Barnes and the GAE alleged that the termination policy adopted and implemented by the FCSS in connection with becoming a charter school system and the subsequent termination of Barnes deprived Barnes and the members of the GAE of their tenure rights under the FDA in violation of the Georgia Constitution's prohibition of retroactive laws and laws that impair the obligation of contracts. See Ga. Const. of 1983, Art. I, Sec. I, Par. X (hereinafter "Paragraph X"). Paragraph X provides: "No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed."

Barnes and the GAE sought (1) a declaration that Barnes's termination retroactively injured her vested rights and impaired her contractual rights in violation of Paragraph X; (2) a declaration that FCSS's failure to preserve vested rights of GAE

4

educators retroactively injured their vested rights and impaired their contractual rights in violation of Paragraph X; (3) injunctive relief compelling FCSS to reinstate Barnes with back pay and enjoining FCSS and the State Board of Education from denying her rights under the FDA in the future; (4) injunctive relief prohibiting FCSS and the State Board of Education from denying or depriving GAE educators of their FDA rights in the future; and (5) attorney fees and costs.

The State Appellees moved to dismiss on several grounds, including sovereign and official immunity and failure to state a claim under the anti-retroactivity or anti-impairment-of-contract clauses. With regard to the State Appellees, the trial court rejected the defense of sovereign immunity; rejected the defense of official immunity regarding GAE's claims but barred Barnes's claims based on that defense[2]; and held that Barnes's and the GAE's complaint failed to state a claim. The trial court also sua sponte dismissed the action against the Local Appellees for failure to state a claim.

Barnes and the GAE appealed the trial court's decision to this Court. This Court then transferred the appeal to the Supreme Court of Georgia suggesting that the appeal implicated that court's jurisdiction over cases involving constitutional

---

[2] The trial court made no ruling as to the applicability of official immunity to Local Appellees.

5

questions. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). After concluding that the trial court did not rule on a constitutional question, the Supreme Court returned the appeal to this Court.[3]

1. Barnes challenges the trial court's dismissal of her claims against the State Appellees as being barred by official immunity. We review de novo a trial court's dismissal of an action based on official immunity, which is a matter of law. *Roberts v. Mulkey*, 343 Ga. App. 685, 687 (1) (808 SE2d 32) (2017).

In the oral pronouncement of its decision, the trial court stated that Barnes's alleged injury was "not a continuing event. Rather, at the time that she was terminated, the positions of the parties became fixed." Accordingly, the court concluded, "her rights and the position of the defendants have all been finalized and [accrued]. For that reason, she would not be entitled to . . . either declaratory

---

[3] In its order returning this appeal to this Court, the Supreme Court noted that the trial court's oral pronouncement of its ruling

> shows that it viewed its decision as foreclosing the need for any constitutional ruling, and nothing in the summary written order indicates otherwise. See *Williams v. Williams*, 295 Ga. 113, 114 (757 SE2d 859) (2014) (noting that, while any discrepancy between an oral pronouncement and a subsequent written judgment must be resolved in favor of the written judgment, an oral pronouncement may provide insight into the meaning of the subsequent written judgment).

6

judgment or injunctive relief." Barnes contends that the trial court's decision is contrary to the recent decision of *Lathrop v. Deal*, 301 Ga. 408 (801 SE2d 867) (2017).

In *Lathrop*, the Supreme Court held that "official immunity generally is no bar to claims against state officers in their individual capacities for injunctive and declaratory relief from the enforcement of laws that are alleged to be unconstitutional, so long as the injunctive and declaratory relief is only prospective in nature." *Lathrop*, 301 Ga. at 434-435 (III) (C). Suits for "monetary damages and other retrospective relief" are barred. Id. at 444 (III) (C). Thus, the issue presented is whether Barnes sought prospective relief.

In the complaint, Barnes sought two forms of relief: (1) a declaration that her termination "retroactively and injuriously affected [her] vested rights and impaired [her] contractual rights in violation [of Paragraph X]"; and (2) injunctive relief "compelling FCSS to reinstate [Barnes] with backpay and enjoining FCSS and the State Board of Education from denying [her] rights under the [FDA]."

(a) On appeal, Barnes does not present any argument or citation of authority to support the first form of relief requested — declaratory relief regarding her alleged retroactive injury. Accordingly, that argument is deemed abandoned. See Court of

7

Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Ironwood Capital Partners v. Jones*, _ Ga. App. _ (3) (844 SE2d 245) (2020).

(b) As for injunctive relief, Barnes argues that her claims for reinstatement, back pay, and an injunction prohibiting the defendants from denying her FDA rights in the future are all prospective in nature. The State Appellees argue that the only actions that Barnes alleged the State Appellees took were to approve the Fannin County School System's charter petition and enter into an agreement with the Fannin School Board in July 2015; the State Appellees assert that these actions are "necessarily 'backward-looking.'"

In *Lathop*, the Supreme Court defined retrospective relief as "monetary damages and other relief for wrongs already done and injuries already sustained" and prospective relief as "relief from the threat of wrongful acts and injuries yet to come—especially in the form of injunctions and declaratory judgments." *Lathrop*, 301 Ga. at 434 (III) (C). Based on these definitions, it is easy for us to conclude that Barnes's claim for injunctive relief barring the State Appellees from further interference with her FDA rights constitutes prospective relief.

8

As for reinstatement, we have found no Georgia law on point regarding whether reinstatement constitutes prospective injunctive relief. Federal courts, however, draw the same distinction between prospective and retrospective relief when addressing the analogous issue of whether claims against state officials are barred by Eleventh Amendment immunity. See *Summit Med. Assocs. v. Pryor*, 180 F3d 1326, 1337 (II) (B) (11th Cir. 1999) ("[T]he Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief."). And the 11th Circuit has held that "requests for reinstatement constitute prospective injunctive relief that . . . are not barred by the Eleventh Amendment." *Lane v. Central Alabama Community College*, 772 F3d 1349, 1351 (11th Cir. 2014). The equitable claim for reinstatement is seen as "purely prospective injunctive relief that orders the state official to return the former employee to the state's payroll." (Citation and punctuation omitted.) *Dotson v. Griesa*, 398 F3d 156, 178 (IV) (A) (2d Cir. 2005).

Accordingly, we conclude that Barnes's claim for injunctive relief barring the State Appellees from further interference with her FDA rights and her claim for reinstatement both seek prospective relief and are not barred by official immunity.

9

With regard to back pay, however, we conclude that Barnes's claim would be barred. At first blush, a claim for back pay certainly appears to constitute a claim for "monetary damages and other relief for wrongs already done and injuries already sustained" as stated in *Lathrop*. Barnes argues that back pay is "'an integral part of the equitable remedy of reinstatement' that 'is not comparable to damages in a common law action.'" quoting *Harmon v. May Broadcasting Co.*, 583 F2d 410, 411 (8th Cir. 1978). But neither *Harmon* nor other cases cited by Barnes are Eleventh Amendment cases; they are therefore not analogous to the issue of official immunity. See *Harmon*, 583 F.2d at 411 ("An award of back pay under Title VII for discriminatory employment practices is an integral part of the equitable remedy of reinstatement and is not comparable to damages in a common-law action for breach of employment contract.") And, as Barnes admits, the only Eleventh Amendment case that she cites holds that a claim for backpay is a claim for a retroactive award barred by the Eleventh Amendment. See *Dwyer v. Regan*, 777 F2d 825, 836 (2) (B) (2d Cir. 1985); see also *Meiners v. Univ. of Kansas*, 359 F3d 1222, 1232 (10th Cir. 2004) ("[C]laims for back pay, monetary damages, and retrospective declaratory relief are barred by the Eleventh Amendment."). We find this reasoning persuasive.

10

In sum, we hold that the trial court erred by concluding that Barnes's request for reinstatement and a prohibition on further interference with her FDA rights are barred by official immunity but that the trial court correctly held that Barnes's request for backpay is so barred. We therefore reverse in part the trial court's grant of the State Appellees's motion to dismiss Barnes's claims based on official immunity.[4]

2. Barnes and the GAE contend that the trial court erred by dismissing their claims for failure to state a claim. They argue that the trial court erred by relying on this Court's decision in *Day v. Floyd County Bd. of Ed.*, 333 Ga. App. 144 (775 SE2d 622) (2015), to foreclose their constitutional claims. We agree.

The trial court held that the appellate courts had already resolved that any vested rights under the FDA that Barnes and other GAE teachers may have acquired ceased to exist when they entered into contracts with the FCSS after it became a charter school system:

> Under Georgia law, . . . it is settled that the rights of educators are determined by statute and are to be looked at at the time of the entry of their employment contracts. In this instance, it is undisputed that the

---

[4] The trial court did not dismiss GAE's claims against the State Appellees based on official immunity. The State Appellees urge us to affirm the dismissal of GAE's claims on this alternative ground even though this alternative ground was not raised in a cross-appeal. We decline to do so; the issue can be addressed on remand.

Fannin County Board of Education, in fact, was a charter school system; has in fact entered into the Charter School Act and that any individuals who would contract with them . . . would be subject to its terms and conditions. And the [Charter School] Act makes it clear, as well as the appellate authorities, that the rights which might exist under the [FDA] cease to exist upon entry into a contract with a charter school system.

In *Day*, this Court held the same thing with regard to plaintiff Day:

[A]ny right Day has to continued employment derives from the FDA only, and the General Assembly has provided that, absent a provision in the charter to the contrary, charter schools and charter systems shall not be subject to the FDA. See OCGA § 20-2-2065 (a). Having accepted employment with a charter system that was not subject to the FDA, Day had no tenure or right to continued employment with that charter system; consequently, she was not entitled to any of the procedural rights afforded to tenured employees under the FDA prior to the nonrenewal of her employment contract.

(Footnotes omitted.) *Day*, 333 Ga. App. at 148-149 (1). The trial court here did not specifically mention *Day* in the oral pronouncement of its decision or in the written order, but the language in the court's oral pronouncement shows that it followed the law stated in *Day*. Thus, based on the law stated in *Day*, the trial court held that Barnes and the members of the GAE were not entitled to any tenure rights under the FDA. And, as shown above, the trial court stopped there and never reached the

12

Paragraph X constitutional questions raised by Barnes and the GAE. By failing to reach the constitutional question, the trial court erred.

In *Day*, this Court specifically noted that "[w]hether OCGA § 20-2-2065 (a) is constitutional was not decided below, and it is not an issue that this Court may decide." Id. at 149 n.5. Moreover, *Day* did not arise under the anti-impairment-of-contract or anti-retroactivity clauses of the Georgia Constitution. And in general, the simple fact that the legislature enacted a law — here, the Charter Systems Act — that provided that the FDA did not apply to charter school systems does not mean that the legislation complies with Paragraph X. For example, "[e]ven when the General Assembly clearly provides that a law is to be applied retroactively, our Constitution forbids statutes that apply retroactively so as to injuriously affect the vested rights of citizens." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 175 (2) (751 SE2d 337) (2013); see also *Swann v. Bd. of Trustees of Joint Mun. Employees' Benefit System*, 257 Ga. 450, 453 (2) (360 SE2d 395) (1987) ("Where a statute or ordinance establishes a retirement plan for government employees, and the employee contributes toward the benefits he is to receive and performs services while the ordinance or statute is in effect, the ordinance or statute becomes part of the contract of employment and is a part of the compensation for the services rendered so that an

13

attempt to amend the statute or ordinance and reduce, or eliminate, the retirement benefits the employee is to receive violates the impairment clause of the state constitution."). Finally, such a constitutional question must first be addressed in the trial court, not on appeal. See, e.g., *DeKalb County v. City of Decatur*, 297 Ga. App. 322, 325 (677 SE2d 391) (2009).

We therefore vacate the trial court's ruling that Barnes and the GAE failed to state a claim for a violation of Paragraph X and remand for the trial court to consider the constitutional question in the first instance.

*Judgment reversed in part, vacated in part, and case remanded. Dillard, P. J., and Brown, J., concur*.